The complaint was as follows:
"I. That on 7 December, 1892, Thomas B. Keogh and Harriett A. Keogh, his wife, executed to the above-named defendant B. L. Duke a deed of mortgage, wherein they conveyed unto him a large and valuable real estate, situate in the city of Greensboro, to-wit": (here follows the description of three tracts of land.)
"II. That said Keogh and wife afterwards, to-wit, on 18 February, 1893, executed a deed in trust to John N. Wilson, whereby they conveyed the same lands above described in the deed of mortgage to B. L. Duke, unto him, the said Wilson, in trust to secure a debt of $1,066.73 to J. W. Scott Co., a body corporate doing business in the city of Greensboro; $1,061.08 to Tyre Glenn; $1,403.08 to J. D. White, and $1,805.43 to J. A. Hoskins, with power in the trustee, in case of nonpayment of said sums by 18 February, 1894, and the interest thereon at 8 per cent, to advertise and sell the lands therein conveyed, and out of the proceeds pay the said sums of money, after first retaining all costs and expenses incident to the sale, as will fully appear by a copy of said deed in trust, on record in the register's office of Guilford County, in book 92, page 26, and hereto annexed as a part of this complaint.
"III. That said B. L. Duke, subsequently to the execution of the mortgage aforesaid, made an assignment to defendants V. Ballard *Page 141 
and J. F. Wiley, as trustees, of all his property, to secure his creditors, and amongst the property conveyed he transferred to said Ballard and Wiley the bond secured in said Keogh mortgage, where by they became entitled to the security of said mortgage for the (197) payment of the sum of $8,500 and the interest thereon.
"IV. That in June, 1894, the creditors secured in the deed in trust to Wilson being anxious to get the property in shape to handle so as to get the Duke debt as well as their own out of it, dispatched Tyre Glenn, one of their number, to Durham to see the said Ballard and Wiley, assignees of B. L. Duke, and it was agreed then that plaintiffs might proceed and sell under their deed subject to the Duke mortgage, and buy and then subdivide into lots and sell in lots, with the understanding that sales should be for cash as to one-third of the purchase money, one-third on six months, and the other third on 12 months, and that the cash received should be paid over on the Duke mortgage, and the proceeds of the notes for the deferred payments should likewise be paid over on the same mortgage, until the whole debt was paid, and all this was agreed to, with the further understanding that said Ballard and Wiley could not specify any length of time during which they could wait for payment in this way, but with the agreement on the part of said Glenn and his coplaintiffs that, if said Ballard and Wiley were obliged to close up the trust estate under Duke's assignment, they were to go and sell and pay over at once as agreed on, in parcel.
"V. That the arrangement was made and appeared to be perfectly satisfactory to all parties, and plaintiffs, having full confidence that the property conveyed in the two deeds was worth and could be sold for enough to satisfy all the debts, in pursuance of such arrangements at Durham, on 6 July caused John N. Wilson to advertise, and on 6 August, 1894, the property was put up and sold and knocked down to the plaintiffs, or to one of them in trust for himself and (198) the others, in order to put themselves in a situation to sell the same in parcels, as had been agreed upon, and accordingly they took title and sought to get possession of the property, but were delayed therein for some two months after their said purchase, and since that time they have rented out the property, and it is still rented out, on terms not inconsistent with a sale or sales, as had been agreed on with Ballard and Wiley.
"VI. That in November, 1894, but a short time after plaintiffs had purchased and got into possession as aforesaid, Mr. Ballard, one of the assignees of B. L. Duke, wrote to plaintiff Glenn making inquiry into what plaintiffs were doing with the property, and to this answer was made apprising him of the very short time they had had possession, *Page 142 
and asking for an extension of time so as to allow them to make sales in lots or parcels, and in reply to this application for extension of time said Ballard wrote back that he would extend the time to 15 December, to have all the money paid down in cash, and on the reception of this last letter the plaintiff Glenn again went down to Durham to see the assignees.
"VII. That on the occasion of this last visit to Durham last above spoken, of the attention of said Ballard was called to the original understanding and contract between them in regard to a sale and purchase by the plaintiffs, and a subsequent sale of the lands in lots, and the payment of the proceeds over to them to the extent of paying the debt of Duke in full, and the terms of the original agreement aforesaid were again assented to, on the assurance of plaintiffs then and there given that in case of any necessity to them to close out the deed of assignment made to them by Duke, they, the plaintiffs, would at once subdivide the property into lots and go on and make sales and pay over the proceeds to them as had been agreed on, and the (199) plaintiffs well hoped that Ballard and Wiley would carry out this joint arrangement; but two weeks thereafter they wrote to plaintiffs saying they were not willing that the property should be subdivided and sold by plaintiffs at public sale, but might be sold privately, and in bulk and not in lots.
"VIII. That very soon after this last position was taken by Ballard and Wiley, to-wit, on 24 December last, they advertised a sale of said property, to take place on 24 January last past; but they withdrew that advertisement and did not sell on the day appointed; but instead of selling on that day they again advertised on 25 January to sell all the said lands on 1 March, (1895), with a suggestion in the advertisement that the lands may be subdivided before the day of sale and sold in lots or parcels, without saying that they would be so sold.
"IX. That seeing the equivocal language used in said advertisement, in regard to selling, whether en masse or in parcel or lots, the plaintiffs, in order to favor the disposition of the property under circumstances to bring the most money, have opened a correspondence on the subject and urged a sale by lots; but in answer to such reasonable request the plaintiffs are now informed by said Ballard and Wiley that they will not sell in lots, buten masse only.
"X. Plaintiffs further complaining show unto the court that the lands conveyed by Keogh and wife in the mortgage to secure the debt of B. L. Duke embrace a considerable area of ground, about sixteen acres, situate in the most desirable part of the city of Greensboro for private residences, and that the same is already subdivided to a *Page 143 
considerable extent into lots, and is capable of being further subdivided, so as to be capable of being put up to sell in quantities and size of lots inviting to bidders, and within the ability of parties to buy and pay fair prices for the same, as will more fully appear by (200) reference to the Duke mortgage and to a plat of the lands herewith filed and prayed to be taken as a part of this complaint, and they further show that a sale in lots and parcels would pay off the Duke mortgage and in large part, as they believe, their debts secured in the said deed in trust to Wilson; but if sold en masse, the debt to Duke being very large, but few persons, if any, besides those interested in the Duke mortgage will have the pecuniary ability to bid at all at the sale.
"XI. That it will be improper and oppressive on plaintiffs if defendants shall go on and sell, as they have announced, in bulk and not in lots, and, besides, plaintiffs show that the notice given of the approaching sale is misleading in that it fails to invite bidders by stating the manner of the sale, whether in bulk or in lots, and instead thereof is suggestive of a sale en masse.
"XII. Plaintiffs show, as heretofore alleged, that a sale as proposed by defendants en masse is not necessary to the collection of the Duke debt, but the same can be made without delay and with great certainly as readily by a sale in lots, as proposed by plaintiffs, and if it shall be allowed to be made en masse, a great and irreparable injury will be done plaintiffs, and it will give those interested in the Duke mortgage the unconscionable advantage of buying without competition of bidders, and the plaintiffs show that the sale will be made, as they are informed, en masse, unless restrained by this honorable court. Whereupon plaintiffs demand judgment that defendants be enjoined from selling the lands in the Duke mortgage as threatened, etc.
"XIII. That the plaintiffs herein have begun an action entitled as above in the Superior Court of Guilford County and have issued a summons therein."
The defendants, in reply to said affidavits, filed the affidavit (201) of V. Ballard as answer, as follows:
"I. Paragraph one is true, except that the mortgage referred to is not annexed.
"II. That as to allegations of paragraph second he has not information, but that the deed in trust referred to is not attached.
"III. That the allegations of paragraph third are admitted.
"IV. That some conversation was had between Tyre Glenn and affiant in June, 1894, but that no understanding or agreement was arrived at between them, and except as herein admitted paragraph four is denied. *Page 144 
"V. That so much of paragraph five as alleges that Ballard Wiley, trustees, made any agreement as to sale of the lands or delay in selling same, as is set forth in five, is denied; that as to what course plaintiffs have pursued in that respect, affiant has no information.
"VI. That on 31 October, 1894, Tyre Glenn came to Durham, N.C. and had a conversation with affiant, the result of which was that an agreement was made that the lands should be sold in lots. But that this agreement was entirely without consideration, and was made at the instance of said Glenn, who stated that much more could be realized by selling in this way than as a whole. That on the following day affiant wrote to said Glenn as follows:
"`DURHAM, N.C. 1 Nov., 1894.
"`TYRE GLENN, ESQ.,
"`Greensboro, N.C.
"`DEAR SIR: After thinking over your proposition, as made to us yesterday, we will have to modify it somewhat. We agree to do this: To wait until 1 December, 1894, and if our mortgage is not satisfied (202) by that time, will advertise for 30 days and sell, but cannot agree to sell in lots, and will sell the property as a whole. While we believe that it will bring much more if divided into lots, yet it might not, and then we would not be in a position to protect our interest as fully as if sold as a whole. Some of the lots might sell low, and we would not know just how to bid, and be forced to buy some of the lots and other parties buy some of the others. In other words, while trying to help you gentlemen, we might injure ourselves. But we trust that there may be no occasion to advertise and sell, but that you may make the deal you speak of between now and 1 December, and that you, as well as ourselve, will get your money. We assure you that we have no desire or disposition to take any advantage of you and trust that you may get all that is due you.
"`Yours very truly,
"`V. BALLARD J. F. WILEY,
"`By V. Ballard. Trustees of B. L. Duke.'
"And that at the instance of said Glenn affiant did make another voluntary extension of time to pay the money to 15 December, 1894. That such extension of time was given because said Glenn stated that the property would be sold at good prices before said date and the Duke debt be paid off, as well as the debts due under the Wilson trust.
"VII. That the letter above quoted was not written two weeks after Tyre Glenn and affiant had an understanding as to the sale in lots, but was written the next day. *Page 145 
"VIII. That paragraph eight is substantially true.
"IX. That it is admitted that Ballard Wiley, trustees, refused to sell in lots, but as a whole.
"X. That paragraph ten, being a matter of opinion largely, cannot be admitted or denied, and only sales can demonstrate.
"XI. Paragraph eleven is denied. (203)
"XII. Paragraph twelve is denied, and is immaterial."
Further answering, affiant shows:
"That the necessity for closing up the B. L. Duke, trust spoken of in plaintiffs' complaint, has arisen, and that the trustees have been acting in that capacity since 12 December, 1893.
"That the creditors of said Duke are becoming impatient; some are complaining of delays, and some have taken legal steps to compel said trustees to wind up the estate.
"That said trustees have indulged T. B. Keogh for more than a year in the payment of his debt to B. L. Duke's estate, and that the following voluntary extensions have already been allowed in the matter of the sale of the land conveyed:
"1. The extension mentioned in the letter dated 1 November, 1894.
"2. A further extension to 15 December, 1894.
"3. A few days' extension on 14 December, 1894, and after much correspondence a final extension of time to the sale day, to-wit, 1 March, 1895.
"That said trustees have done all they could, consistent with their duty, to oblige the second mortgagees of T. B. Keogh.
"That said parties accepted a second mortgage on the land in dispute `with their eyes open.'
"That the debt due by Keogh to B. L. Duke is not denied or disputed.
"That there is no cloud upon the title and no allegation of such.
"That the said second mortgagees have asserted no equity, nor can they do so in this case, calling for the aid of a court of equity.
"That all the conversations between Duke's trustees and the (204) parties holding under the Wilson trust have been mere conferences looking to the best interest of all the parties; have been likewise informal, and any understanding or agreement has been totally without consideration, but wholly voluntary and of no binding force or effect upon any person, and was so understood and intended at the time.
"Wherefore, having fully answered, they pray that they may go hence without day and recover their costs."
His Honor, having heard and read the affidavits, heard other evidence and considered the arguments of counsel representing both plaintiffs and defendants, continued the said restraining order until the hearing, and defendants appealed. *Page 146 
This is not a controversy between mortgage creditor and debtor, in which equitable relief is sought by the debtor on the ground of unconscionable or fraudulent conduct on the part of the creditor, but it is a contest between two sets of creditors, prior and subsequent, as to how the same property which was conveyed to them by the common debtor should be sold, whether under the first mortgage in three tracts or parcels, as it was conveyed, or in numerous subdivisions, as the subsequent creditors insist. The plaintiffs, who are trustees for creditors of the first mortgagee, advertised a sale of the land conveyed in the mortgage and as it was conveyed, in the land conveyed in the mortgage and as it was conveyed, in three tracts, under the power contained in the first mortgage, and also under that given to them (205) in the deed of trust executed to them by the first mortgage. Whereupon the plaintiff creditors, under a junior deed of trust made by the same debtor upon the same property, procured a stay of the sale in proceedings by injunction before Judge Greene. There is no dispute about the debt due to either set of creditors, nor about the execution and validity of the deeds securing the debts. As we have said, the plaintiffs neither set up nor show any conditions or circumstances which entitle them to the interference of the court in the matters complained of. They allege, it is true, that if the property were subdivided into numerous tracts it would bring more money at sale, and they also allege that they had an agreement with the defendants that they, the plaintiffs, might sell the land under their deed of trust and take possession and then sell in subdivisions, applying the money from the sales to the payment of the defendants' claims as fast as received. But the agreement was without consideration and made purely as a favor to the plaintiffs. The plaintiffs, however, did under the agreement sell the land and buy it themselves. After the sale and purchase by themselves they made numerous subdivisions of it, but have been unable to make sales, though the defendants have given them reasonable time for that purpose. The plaintiffs, do not allege insolvency or even present inability to pay off the defendants' claims, and if the property is really worth what the plaintiffs say it is, it would seem they ought to pay the defendants' claims and take upon themselves the trouble, expense and delay of making sales of the property in subdivisions, and not put those inconveniences on the defendants. Besides, the creditors of the assignor of the defendants are demanding and in some cases threatening legal proceedings for the recovery of their debts. There was error in the *Page 147 
order of his Honor restraining the sale. The defendant must (206) be allowed to proceed with the sale, selling the land in three separate tracts as it was conveyed to their assignor in the mortgage to him.
Error.
Cited: Montague v. Bank, 118 N.C. 287.